1  Gregory C. Nuti (CSBN151754)
    gnuti@schnader.com
2  Kevin W. Coleman (CSBN 168538)
    kcoleman@schnader.com
3  Michael M. Carlson (CSBN 88048)
    mcarlson@schnader.com
4  SCHNADER HARRISON SEGAL & LEWIS LLP
   One Montgomery Street, Suite 2200
5  San Francisco, California 94104-5501
   Telephone: 415-364-6700
6  Facsimile: 415-364-6785

7  Attorneys for
   Chapter 11 Trustee, Bradley D. Sharp

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| IN RE: | **U.S. Dist. Ct. Case No. 2:11-cv-02369 LKK** |
| SK FOODS, L.P., A CALIFORNIA LIMITED PARTNERSHIP, | |
| | **Bankruptcy Case No. 09-29162-D-11** |
| DEBTOR. | |
| | **Adversary Proceeding No. 11-02337 D** |
| BRADLEY D. SHARP, et al., | |
| Plaintiff, | **Chapter 11** |
| vs. | **DCN:  FBM-1** |
| SKPM CORP., et al., | **OPPOSITION TO MOTION TO WITHDRAW THE REFERENCE** |
| Defendants. | Date: October 24, 2011<br>Time: 10:00a.m.<br>Judge: Hon. Lawrence K. Karlton<br>Location 501 I Street, 15th Floor<br>Sacramento, CA 95814 |

# **TABLE OF CONTENTS**

**PAGES**

I.   FACTUAL BACKGROUND ..................................................................................................2

II.   ARGUMENT .........................................................................................................................5

    A.   Standards Governing Withdrawal of Reference ................................................................5

        1.   The SKPM Action Is a "Core" Proceeding..................................................................6

        2.   The SKPM Action Remains Core Under *Stern v. Marshall* ............................................6

        3.   The Remaining Factors Militate Against Withdrawal ....................................................11

III.   REGARDLESS OF HOW THE WITHDRAWAL MOTION IS RESOLVED, THIS COURT SHOULD ORDER THAT IMMEDIATE DISCOVERY CAN BE UNDERTAKEN TO CONFIRM JURISDICTION IN THE SKPM ACTION ................12

IV.   CONCLUSION....................................................................................................................15

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: (415) 364-6700
FAX: (415) 364-6785

# TABLE OF AUTHORITIES

Page(s)

CASES

*Carmel v. Galam (In re Larry's Apartment, LLC)*,
   210 B.R. 469 (D. Ariz. 1997) ..................................................................................................6

*El-Fadl v. Cent. Bank of Jordan*,
   75 F.3d 668 (D.C. Cir. 1996) ................................................................................................13

*Fed. Trade Comm'n v. Affordable Media, LLC*,
   179 F.3d 1228 (9th Cir. 1999) ................................................................................................2

*Hawaiian Airlines, Inc. v. Mesa Air Group, Inc.*,
   355 B.R. 214 (D. Haw. 2006) ...............................................................................................12

*Heller v. Gregory Canyon, Ltd.*,
   2011 WL 3878347 (Bankr. N.D. Cal. Aug. 30, 2011) ............................................................7

*In re Canter*,
   299 F.3d 1150 (9th Cir. 2002) ................................................................................................5

*In re Doctors Hosp. 1997, L.P.*,
   351 B.R. 813 (Bankr. S.D. Tex. 2006) .................................................................................12

*In re Enron Corp.*,
   317 B.R. 232 (S.D.N.Y 2004) ...............................................................................................11

*In re Goodman*,
   991 F.2d 613 (9th Cir. 1987) ..................................................................................................6

*In re Okwonna-Felix*,
   2011 Bankr. LEXIS 3028 (Bankr. S.D. Tex 2011) .................................................................9

*In re Peacock*,
   2011 WL 3874461 (Bankr. M.D. Fla. Sept. 2, 2011) .............................................................9

*In re Safety Harbor Resort and Spa*,
   2011 WL 3849639 (Bankr. M.D. Fla. 2011) ..........................................................................9

*Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*,
   458 U.S. 50 (1982) ..................................................................................................................7

*Security Farms v. Intl. Brotherhood of Teamsters (In re Security Farms)*,
   124 F.3d 999 (9th Cir. 1997) ..................................................................................................6

*Siegel v. FDIC (In re IndyMac Bancorp Inc.)*,
   2011 U.S. Dist. LEXIS 78418 (C.D. Cal. 2011) ...................................................................11

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: (415) 364-6700
FAX: (415) 364-6785

*Sigma Micro Corp. v. Healthcentral.com (In re Healthcentral.com)*,
   504 F.3d 775 (9th Cir. 2007) ..................................................................................................11

*Stern v. Marshall*,
   131 S. Ct. 2594 (2011) .................................................................................................... passim

STATUTES

11 U.S.C. § 502(d) ..........................................................................................................2, 9, 10

11 U.S.C. § 548 ..................................................................................................................3, 5, 10

11 U.S.C. § 549 ...........................................................................................................................3

28 U.S.C. § 157 ..........................................................................................................................7

28 U.S.C. § 157(a) .....................................................................................................................8

28 U.S.C. §157(b)(2) ..............................................................................................................8, 9

28 U.S.C. § 157(b)(2)(A) ........................................................................................................6, 8

28 U.S.C. § 157(b)(2)(C) ........................................................................................................7, 9

28 U.S.C. § 157(b)(2)(H) ........................................................................................................6, 8

28 U.S.C. § 157(b)(3) .................................................................................................................8

28 U.S.C. § 157(d) .....................................................................................................................5

28 U.S.C. § 158 ..........................................................................................................................8

28 U.S.C. § 158(c)(1) .................................................................................................................7

28 U.S.C. § 1334 (a) and (b) ......................................................................................................7

Cal. Civ. Code § 3439 ..............................................................................................................10

OTHER AUTHORITIES

Fed. R. Bankr. Proc. 5011(c) ...................................................................................................12

U.S. Constitution, Fifth Amendment .......................................................................................13

Gen. Order 182 ...........................................................................................................................8

U.S. Constitution, Seventh Amendment ..................................................................................11

U.S. Constitution ........................................................................................................................7

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: (415) 364-6700
FAX: (415) 364-6785

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: (415) 364-6700
FAX: (415) 364-6785

Plaintiff, Bradley D. Sharp ("Trustee"), the duly appointed and acting chapter 11 trustee for the estates of SK Foods, L.P., a California limited partnership ("SK Foods"), and RHM Industrial/Specialty Foods, Inc., a California corporation, d/b/a Colusa County Canning Co. ("RHM", collectively with SK Foods, the "Debtors") hereby submits this opposition ("Opposition") to SKPM Corp., SSC&L 2007 Trust, Monterey Peninsula Farms, LLC, the Scott Salyer Revocable Trust, and Scott Salyer ("Salyer"), in his capacity as Trustee of the SSC&L 2007 Trust and the Scott Salyer Revocable Trust's (collectively, the "Defendants") motion to withdraw the reference of Adversary Proceeding No. 11-02337 (the "SKPM Action").

As discussed below, the SKPM Action seeks to recover assets worth approximately $50 million that Scott Salyer is trying to put into a Cook Islands asset protection trust in order to prevent creditors from ever seeing a cent of that money. The assets in question, stock in an Australian company purchased with SK Foods's money, and an inter-company loan made with SK Foods's money to the Australian company, were assets of SK Foods when it filed for bankruptcy. Irrefutable evidence demonstrates that the stock was held by SK Foods, yet Salyer purportedly acting on SK Foods's behalf executed documents to transfer that stock to another Salyer-controlled company in July 2009 – after SK Foods was in bankruptcy, after the Trustee was appointed, and after Salyer had been terminated by the Debtor. Hence, the complaint seeks damages for willful violation of the automatic stay. Alternatively, if Salyer's claims that the assets in question were in fact transferred prior to bankruptcy, the Trustee's complaint seeks to avoid any transfer as a fraudulent conveyance because SK Foods received absolutely nothing in exchange, and SK Foods was insolvent at the earliest point in time any purported transfer could have occurred.

The SKPM Action is a so-called "core" proceeding, even under the United States Supreme Court's recent *Stern v. Marshall* opinion. The claim for violation of the automatic stay arises directly out of obligations created by the Bankruptcy Code, and an essential attribute of the bankruptcy court's power to control the *res* of a bankrupt entity. Alternatively, each of the Defendants who have moved for withdrawal have filed proofs of claim in the Debtors' bankruptcy case, and resolution of the SKPM Action has a direct bearing on whether their claims

1

can be allowed. 11 U.S.C. § 502(d) (disallowing claims of entities holding avoided transfers unless the property is returned to the estate). For these reasons, all of the claims in the SKPM Action fall squarely within the Bankruptcy Court's core jurisdiction.

Even assuming *arguendo* that the claims are non-core, nothing in the *Stern v. Marshall* case changes long standing Ninth Circuit law holding that withdrawal of the reference is not warranted unless and until it is clear that a trial is imminent. The cases recognize that the Bankruptcy Court is generally more familiar with the facts of the underlying bankruptcy case and is perfectly equipped to handle all proceedings up to the point of trial. Accordingly, the motion to withdraw the reference should be denied.

## I.   FACTUAL BACKGROUND

The SKPM Action concerns approximately $50 million in cash (the "Australian Funds") currently held by the liquidators for SK Foods Australia Pty, Ltd. ("Cedenco") and related entities in Australia. The $50 million represents the proceeds stock in SK Foods Australia Pty, Ltd. ("Cedenco Stock") and the amount distributable on account of an inter-company loan made by SK Foods, L.P. to Cedenco ("Intercompany Loan"). Scott Salyer, the Debtors' former owner and CEO, claims that the Cedenco Stock and Intercompany Loan were transferred out of the Debtors and into other non-debtor entities he controls prior to bankruptcy. He claims that the Cedenco Stock and the Intercompany Loan are now held by a Nevis limited liability company he set up called Fast Falcon, LLC. Salyer formerly held himself out as Fast Falcon's manager, but now claims that Fast Falcon is controlled by an affiliate of Asia Trust, Ltd., a well known "asset protection" advisor based in the Cook Islands. *See Fed. Trade Comm'n v. Affordable Media, LLC,* 179 F.3d 1228, 1239-40 (9th Cir. 1999) (describing the activities AsiaCiti Trust on behalf of individuals seeking to shield their assets).[1] The Trustee disputes that the Cedenco Stock and Intercompany Loan were ever transferred out of SK Foods, or even if they were, any such

---

[1]   AsiaCiti appears to be an affiliate of Asia Trust, Ltd. according to an article published in Volume 7, Issue 1 of the Cook Islands: International Tax and Offshore Trust News entitled "Cook Islands High Court Denies Repatriation Of Trust Assets to the U.S.A." which can be viewed at http://www.mondaq.com/article.asp?articleid=8571. In that article, Asia Trust, Ltd.'s actions in refusing to honor the demands for return of the funds sought in the *FTC v. Affordable Media* case are described.

2

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: (415) 364-6700
FAX: (415) 364-6785

1  transfer was fraudulent and therefore avoidable under 11 U.S.C. § 548(a).  The Trustee filed the
2  instant adversary proceeding to recover these assets for the benefit of SK Foods's creditors.

3  As noted above, in this action the Trustee seeks a determination that Defendants violated
4  the automatic stay by executing documents purporting to transfer the estate's equity interest in
5  the Cedenco Equity post-bankruptcy, and by asserting rights to the proceeds of the Cedenco
6  Equity and the Intercompany Loan (together with the Cedenco Equity, the "Cedenco Assets").[2]
7  Alternatively, if the Australian courts determine that Fast Falcon is the owner of the Cedenco
8  Assets under Australian law, the complaint seeks a determination that the Cedenco Assets are
9  recoverable under fraudulent transfer laws.

10  Fast Falcon is a Nevis limited liability company that Salyer has held himself out as the
11  manager.  *See* Exhibit NN of the Supplemental Exhibits to the Government's Motion Seeking
12  Pre-Trial Detention "Pre-Trial Detention Motion") filed in *U.S. v. Salyer*, Case No. 10-cr-0061
13  LKK [Doc. No. 20].  Salyer transferred several million dollars in funds under his control to Fast
14  Falcon in the summer and fall of 2009.  *See* Affidavit of Agent Paul Artley, ¶ 92, appended to
15  Exhibit C of the Pre-Trial Detention Motion [Doc. No. 12].[3]  Salyer's accountant, Cary Collins,
16  holds himself out as Fast Falcon's agent, and has filed claims to the Cedenco Assets on Fast
17  Falcon's behalf in the Australian liquidation proceedings.  *See* Declaration of Brad Sharp in
18  Support of Ex Parte Application for Temporary Restraining Order and Order to Show Cause Re
19  Preliminary Injunction, Exh. 1 filed in *Sharp v. SKPM Corp., et al*, Adv. Proc. No. 11-2337
20  [Doc. No. 62].  Mr. Collins was actively involved in moving Salyer and Salyer-controlled assets
21  overseas.  He reportedly stated to an account manager at Mechanics Bank in 2009 that the funds
22  in Salyer and Salyer affiliate accounts at Mechanics Bank were being transferred to overseas
23  accounts held by Fast Falcon in order to conceal Salyer's interest in that money.  *See* Report of
24  Interview with Debra Larrick [Doc. No. 129-5].

---

[2]  The Trustee also intends to amend the complaint to add a claim for relief that any purported transfer of the Cedenco Equity is avoidable as an unauthorized post-petition transfer under 11 U.S.C. § 549.

[3]  Except as otherwise noted, docket number references are to documents filed in Salyer's criminal case, Case No. 10-cr-0061 LKK.

3

OPPOSITION TO MOTION TO WITHDRAW REFERENCE                               PHDATA 3599201_1

The sole member of Fast Falcon is a trust established under the laws of the Cook Islands called the Hawker Sydley Trust. *See* Declaration of Kelly Woodruff in Opposition to Temporary Restraining Order, Exh. C, filed in *Sharp v. SKPM Corp., et al*, Adv. Proc. No. 11-2337 [Doc. No. 74]. The trustee of the Hawker Sydley Trust is an affiliate of AsiaTrust, Ltd., another Cook Islands corporation. AsiaTrust Limited advertises on the internet as an entity that specializes in protecting assets from the reach of creditors. *See supra* at note 1. Fast Falcon was formed with the assistance of Jacob Stein, an attorney in Los Angeles who along with his law partner "wrote the book" on asset protection strategies. *See* Declaration of Natalie Bush-Lents in Support of Motion for Entry of Preliminary Injunction filed in *Sharp v. SKPM Corp., et al*, Adv. Proc. No. 11-2337 [Doc. No. 125]. Not surprisingly, Mr. Stein's advice to clients on how to keep their assets out of creditors' reach is the blue-print for Fast Falcon's creation – right down to using a Nevis limited liability company and a Cook Islands trust as the sole member.

The obvious inference to draw from the foregoing facts is that Salyer set up Fast Falcon with the intent to move his assets out of creditors' reach. Although Salyer's lawyers profess not to represent Fast Falcon and to "not know" if Salyer has any control over or any direct or indirect interest in Fast Falcon,[4] the suggestion that he does not is ludicrous. People just do not transfer

---

[4]  The following colloquy took place between Salyer's counsel and the Bankruptcy Court at the hearing on the Trustee's request for a preliminary injunction"

   [THE COURT]:  Is it fair to say that Mr. Salyer is the primary person in control of Fast Falcon?

   MR. PETERSON:  I can't say that, Your Honor.  I don't believe that to be true.  There's a manager . . . who is responsible.

   THE COURT:  How about the entity that control the manager of Fast Falcon?

   MR. PETERSON:  I don't know, Your Honor.

   THE COURT:  And the reason I ask i[f] your office really doesn't represent . . . Fast Falcon [is because] in various declarations and in pleadings and seem to represent many factual issues that pertain to the formation in the ongoing consistency of Fast Falcon.

Hr'g Tr. at 9:9-21.

4

millions of dollars to offshore asset protection havens without having the ability to get that money back when they really want or need it.

On August 31, 2011, the Trustee filed a Motion for a Temporary Restraining Order and Order to Show Cause re Preliminary Injunction (the "TRO Motion") [Doc. No. 61] seeking a temporary restraining order preventing Fast Falcon and the Defendants from further transferring their asserted rights and claims to the Cedenco Assets. The TRO Motion further requested that the Bankruptcy Court enjoin Fast Falcon and the Defendants from dissipating or transferring the Cedenco Assets and to appoint a receiver to take possession of any instruments evidencing Fast Falcon's rights and claims to the Cedenco Assets, as well as any distribution to Fast Falcon of the Australian Funds. Defendants opposed the TRO Motion on several grounds, requesting that the Bankruptcy Court enter an order immediately staying all proceedings in the case [Doc. No. 73]. On September 1, 2011, the Bankruptcy Court issued a Temporary Restraining Order and Order to Show Cause Re Preliminary Injunction [Doc. No. 77] setting a further hearing on the issuance of a preliminary injunction to be held on September 15, 2011. In an attempt to derail or delay the preliminary injunction hearing until after the TRO preventing Fast Falcon from further transferring its asserted interest in the Cedenco Assets would expire, Defendants filed an emergency motion with the Bankruptcy Court seeking to stay the hearing. After that was denied, Defendants filed another emergency motion with this Court seeking the same relief, which was also denied. After consideration of Defendants' further opposition to the preliminary injunction and a hearing, the preliminary injunction was entered on September 15, 2011.

II.  **ARGUMENT**

    A.  **Standards Governing Withdrawal of Reference**

In cases or proceedings such as this, in which withdrawal of the reference is not mandatory,[5] the Judicial Code provides that the district court "may withdraw" the reference "for

---

[5] Mandatory withdrawal of the reference applies in a limited number of cases where the proceeding "requires consideration of both title 11 and <u>other laws of the United States regulating organizations or activities affecting interstate commerce</u>." 28 U.S.C. § 157(d) [emphasis added]. Here, the claims at issue turn entirely on provisions of Title 11, section 362 (the automatic stay) and section 548 (recovery of fraudulent transfers).

5

cause shown." 28 U.S.C. § 157(d); *In re Canter*, 299 F.3d 1150, 1154 (9th Cir. 2002) (district court must find "cause" for withdrawal of the reference). The Ninth Circuit has held that when determining whether there is "cause" to exercise the Court's discretion to withdraw the reference, the Court should consider several factors including whether the proceeding at issue is a "core" or "non-core" matter, the efficient use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration, and the prevention of forum shopping. *Security Farms v. Intl. Brotherhood of Teamsters, (In re Security Farms)*, 124 F.3d 999, 1008 (9th Cir. 1997). The party seeking withdrawal of the reference bears the burden of showing that the reference should be withdrawn. *Carmel v. Galam (In re Larry's Apartment, LLC)*, 210 B.R. 469, 472 (D. Ariz. 1997). Defendants cannot meet this burden.

### 1. *The SKPM Action Is a "Core" Proceeding*

Defendants provide no explanation for why a complaint seeking alternatively, remedies for violation of the automatic stay or recovery of fraudulently transferred assets is properly the subject of a withdrawal motion. The claims asserted in the underlying adversary proceeding involve causes of action that are created or determined by a statutory provision of Title 11, which places them squarely within the Bankruptcy Court's so-called "core" jurisdiction. 28 U.S.C. § 157(b)(2)(H) (proceedings to determine, avoid, or recover fraudulent conveyances); 28 U.S.C. § 157(b)(2)(A) (matters concerning the administration of the estate); *In re Goodman*, 991 F.2d 613, 616 (9th Cir. 1987) (action seeking to enforce the automatic stay is a core proceeding because it affects the administration of the estate). The complete absence of any serious analysis on the merits of the motion to withdraw the reference is alone reason to deny the motion.

### 2. *The SKPM Action Remains Core Under Stern v. Marshall*

Defendants rely primarily on the United States Supreme Court's recent decision in *Stern v. Marshall*, a case which addressed whether Congress could vest bankruptcy courts with authority to enter final judgments in certain matters. *Stern v. Marshall*, 131 S. Ct. 2594 (2011). In *Stern*, a creditor of Vickie Marshall (aka Anna Nicole Smith), filed a proof of claim in Ms. Marshall's bankruptcy case asserting damages for her alleged slander. She objected to the

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: (415) 364-6700
FAX: (415) 364-6785

claim and filed a counter-claim against the creditor (the son of her late-husband), claiming that he had improperly interfered with her inheritance.  The bankruptcy court entered a final judgment on the merits of the counter-claim under the authority of 28 U.S.C. § 157(b)(2)(C), which provides that bankruptcy court's "core"[6] jurisdiction extended to "counter-claims by the estate against persons filing claims against the estate."  28 U.S.C. § 157(b)(2)(C).  In *Stern*, the Supreme Court held that although the bankruptcy court had statutory authority to enter a final judgment over the counter-claim at issue in the case, it was unconstitutional for Congress to give bankruptcy courts that power because it violated the separation of powers doctrine.  To fully understand what Stern held, and more importantly, what it did not hold, it is necessary to briefly review the history of bankruptcy court jurisdiction.

When the Bankruptcy Code was first enacted in 1978, it gave bankruptcy courts jurisdiction to enter final orders and judgments in all proceedings arising in or related to a debtor's bankruptcy case, including state law causes of action the debtor held prior to the filing of the bankruptcy case.  However, in *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, the Supreme Court held that it violated the separation of powers doctrine to permit bankruptcy courts to hear and decide a state law breach of contract claim that had arisen prior to the debtor's bankruptcy filing and that could have been asserted regardless of whether there was a bankruptcy case because this amounted to exercising the judicial power of the United States, which the U.S. Constitution vests exclusively in Article III courts.  *Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50 (1982).  In response to *Marathon*, Congress enacted procedures for determining when and to what extent a bankruptcy court can resolve matters described in 28 U.S.C. § 1334 (a) and (b).  *See* 28 U.S.C. § 157 ("Section 157").[7]  A district court may refer such

---

[6] As the Court likely knows, "core" proceedings are those in which a bankruptcy court has the power to enter final orders and judgments.  Bankruptcy courts have subject matter jurisdiction over "non-core" matters, but they cannot enter final judgments in those proceedings.  Instead, in "non-core" matters the bankruptcy court makes proposed findings of fact and conclusions of law, which are reviewed by the district court.  28 U.S.C. § 158(c)(1).

[7] Section 157 is not a jurisdictional provision.  Rather, it provides a mechanism for ascertaining whether a bankruptcy court can enter final orders and judgments. *Stern*, 131 S.Ct. at 2607 ("Section 157 allocates the authority to enter final judgment between the

*…Continued*

7

matters to the bankruptcy court, 28 U.S.C. § 157(a), which has been done in the Eastern District of California and across the Country.  Gen. Order 182.

As noted, section 157(b)(1) of title 28 permits a bankruptcy court to "hear and determine" all cases and all "core proceedings arising under title 11, or arising in a case under title 11."  A bankruptcy court can enter orders and judgments in such matters, subject to appellate review under 28 U.S.C. § 158.  Subsection (b)(2) lists examples of "core proceedings," including "matters affecting the administration of the estate", 28 U.S.C. § 157(b)(2)(A), and "proceedings to determine, avoid, or recover fraudulent conveyances." 28 U.S.C. § 157(b)(2)(H).  "A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." 28 U.S.C. § 157(b)(3).

*Stern* is the first Supreme Court decision to address the constitutionality of any portion of Section 157(b) since its enactment.  The Supreme Court held that a bankruptcy court cannot enter final judgments with respect to a debtor's state law counterclaim against a creditor who had filed a proof of claim against the bankruptcy estate.  The court concluded that while Section 157(b)(2) -- which identifies "counterclaims by the estate against persons filing claims against the estate" as core –-conferred statutory authority for the court to hear and determine the counterclaim, that portion of the statute was an unconstitutional allocation of judicial power from Article III judges to Article I bankruptcy judges:

> Article III, § 1, of the Constitution commands that "[t]he judicial Power of the United States, shall be vested in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." That Article further provides that the judges of those courts shall hold their offices during good behavior, without diminution of salary. Ibid.  Those requirements of Article III were not honored here.  The Bankruptcy Court in this case exercised the judicial power of the United States by entering final judgment on a common law tort claim, even though the judges of such courts enjoy neither tenure during good behavior nor salary protection. We conclude that, although the Bankruptcy Court had the statutory authority to enter judgment on [the debtor's] counterclaim, it lacked the constitutional authority to do so.  *Stern*, 131 S.Ct. at 2600-01.

---

*Continued from previous page*
bankruptcy court and the district court. [] That allocation does not implicate questions of subject matter jurisdiction.");  *See also Heller v. Gregory Canyon, Ltd.*, 2011 WL 3878347 at *3 n.4 (Bankr. N.D. Cal. Aug. 30, 2011).

8

Defendants here appear to be contending that *Stern* dramatically alters the powers of a bankruptcy court: that bankruptcy courts cannot enter a final judgment in the underlying action to remedy stay violations or recover fraudulent conveyances, notwithstanding the provisions of Section 157(b). But as recognized by many courts, the holding of *Stern* is quite narrow and does not support the Defendants' argument. First, *Stern*'s reasoning is predicated on the fact that the counter-claim at issue there was one that arose ". . . under state common law between two private parties," and that it did not "depend upon the will of Congress." [8] *Stern*, 131 S. Ct. at 2614. Indeed, *Stern* repeatedly emphasized that its holding was <u>narrow</u> and <u>limited</u> to Section 157(b)(2)(C) (counterclaims):

> "We do not think the removal of counterclaims such as Vickie's from core bankruptcy jurisdiction meaningfully changes the division of labor in the current statute; we agree with the United States that the question presented is a 'narrow' one." *Stern*, 131 S. Ct. at 2620.[9]

More importantly, *Stern* endorsed the constitutionality of allowing bankruptcy courts to finally adjudicate counter-claims that are based upon an action to avoid and recover transfers of a debtor's assets, given that 11 U.S.C. § 502(d) requires the disallowance of any claim filed by the recipient of an avoided transfer until that property is returned to the estate. *Stern*, 131 S. Ct. at 2617-18. Vesting the power to make final judgments in this context is constitutionally permissible because: (a) the cause of action forming the basis of the counterclaim is a right created by federal bankruptcy law, or alternatively, (b) resolution of the avoidance action is essential to the process of allowing claims in the bankruptcy case. *Stern*, 131

---

[8] Claims arising from violations of rights created by the Bankruptcy Code itself fall within the so-called "public rights" doctrine even under the *Stern* case. *See In re Okwonna-Felix*, 2011 Bankr. LEXIS 3028, *12 (Bankr. S.D. Tex 2011) (public rights doctrine permits bankruptcy court to make final rulings where decision turns on application of the Bankruptcy Code).

[9] *See also*, *Id.* at 2620. "We conclude today that Congress, <u>in one isolated respect</u>, exceeded that [Article III] limitation . . . ."[emphasis added]. This narrow holding "does not impact a bankruptcy court's ability to enter a final judgment in any other type of core proceeding authorized under 28 U.S.C. §157(b)(2)." *In re Peacock*, 2011 WL 3874461 (Bankr. M.D. Fla. Sept. 2, 2011); *In re Safety Harbor Resort and Spa*, 2011 WL 3849639 (Bankr. M.D. Fla. 2011) (concluding that actions to recover preferential transfers remain core).

9

S. Ct. at 2618 ("[T]he question is whether the action at issue stems from the bankruptcy itself or would necessarily be resolved in the claims allowance process.")

Given the limited holding in *Stern*, nothing suggests that it should be read as overruling a long line of Ninth Circuit authority holding that fraudulent transfer actions arising under 11 U.S.C. § 548(a) are core proceedings.

> "The contract suit in Northern Pipeline could have been brought whether or not the plaintiff was bankrupt. A fraudulent conveyance, though, can only exist if the conveyor is insolvent or about to become insolvent, and thus is inextricably tied to the bankruptcy scheme. *See In re Kaiser*, 722 F.2d 1574, 1582 (2d Cir. 1983). If a conveyor enjoys good financial health, a conveyance cannot harm its creditors, who would thus have no cause of action to recover transfer." *In re Mankin*, 823 F.2d 1296, 1307 n.4 (9th Cir. 1987).

In this case, the Trustee is seeking remedies for violations of rights created by the Bankruptcy Code itself – willful violation of section 362(a), or alternatively, the avoidance and recovery of property under section 548(a). These claims have no existence and could not be asserted outside of a bankruptcy case.[10] In addition, Defendants have filed proofs of claim in the Debtors' case. *See* Request for Judicial Notice, Exhibit A. Therefore, adjudication of the Trustee's avoidance claims in the SKPM Action is necessary to determine the allowance or disallowance of these claims. 11 U.S.C. § 502(d). While it is true that Fast Falcon has not filed a claim, Defendants' counsel steadfastly deny that it represents Fast Falcon. Although the Trustee does not believe that is in fact true given the actions counsel has taken on Fast Falcon's behalf, neither it, nor the remaining Defendants, should be permitted to argue that Fast Falcon's status as a non-creditor should warrant withdrawal of the reference.[11] For all of the foregoing

---

[10] It is true that creditors of a debtor can pursue fraudulent conveyance actions against a transferee under state law, *see* Cal. Civ. Code § 3439, a debtor (or trustee who acts as the representative of the debtor) has no standing to do so. Thus, while the remedies are similar, 11 U.S.C. § 548 creates rights that are unique to a bankruptcy case.

[11] In the preliminary injunction proceedings, Defendants repeatedly argued that the Bankruptcy Court did not have jurisdiction over Fast Falcon because it had not been properly served, they denied knowledge of the relationship between Salyer and Fast Falcon, and denied that Defendants counsel represented Fast Falcon. If that is going to be their position, then neither Defendants nor its counsel have standing to assert any rights or claims on Fast Falcon's behalf. The Trustee of course believes that Fast Falcon is controlled directly or indirectly by Salyer, but the Court should not permit defendants to play fast and loose with the Court by trying on the one hand to deny that the Court has

*…Continued*

10

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: (415) 364-6700
FAX: (415) 364-6785

1  reasons, the SKPM Action is a core proceeding even under the *Stern* case, which presents the

2  strongest argument for not withdrawing the reference. *In re Enron Corp.*, 317 B.R. 232, 234

3  (S.D.N.Y 2004) (withdrawal of reference in a fraudulent transfer action not warranted because it

4  is a core proceeding and thus doing so interferes with Congress's allocation of responsibilities

5  between bankruptcy courts and district courts).

### 3.     *The Remaining Factors Militate Against Withdrawal*

7  Even if the Court assumes that the claims in the SKPM Action are non-core or

8  that Defendants have a right to a jury trial, Ninth Circuit precedent dictates that withdrawal

9  motions are premature until the case is ready for trial. Doing so "does not abridge a party's

10  Seventh Amendment right to a jury trial." *Sigma Micro Corp. v. Healthcentral.com (In re

11  Healthcentral.com)*, 504 F.3d 775, 787 (9th Cir. 2007) (bankruptcy court can efficiently handle

12  pre-trial proceedings in non-core cases or cases that require a jury trial). In *Healthcentral*, the

13  Court determined that a bankruptcy court may rule on dispositive motions in advance of a trial

14  because these rulings "merely address whether trial is necessary at all" and do not implicate the

15  party's Seventh Amendment jury trial rights. *Id.* The Ninth Circuit went on to opine that

16  "requiring that an action be immediately transferred to district court simply because of a jury

17  trial right would run counter to our bankruptcy system." *Id.* The Court goes on to explain that

18  judicial economy and efficiency are promoted by "making use of the bankruptcy court's unique

19  knowledge of Title 11 and familiarity with the actions before them." *Id.* at 787-88. This is

20  particularly true in a case such as this one, where only core bankruptcy claims are asserted and

21  the bankruptcy judge is very familiar with the facts and background of the case.

22  Again, the Supreme Court's *Stern v. Marshall* decision cited by Defendants does

23  nothing to change the well settled doctrine in this Circuit that withdrawal of the reference should

24  be deferred until such time as a jury trial will be necessary. *Siegel v. FDIC (In re IndyMac

25  Bancorp Inc.)*, 2011 U.S. Dist. LEXIS 78418 (C.D. Cal. 2011) (denying motion to withdraw

---

*Continued from previous page*
   jurisdiction over Fast Falcon due to a lack of relationship/control, but then on the other
   hand make arguments that only Fast Falcon would be in a position to advance.

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: (415) 364-6700
FAX: (415) 364-6785

reference in proceeding determined non-core under *Stern v. Marshall*). Thus, even if the Court were to accept Defendants' arguments that this proceeding is non-core under *Stern* or that they have jury trial rights, there is no basis to withdraw the reference at this stage of the proceedings.

Finally, as noted above, the appearance of forum shopping justifies denial of a motion to withdraw the reference. *Hawaiian Airlines, Inc. v. Mesa Air Group, Inc.*, 355 B.R. 214 (D. Haw. 2006); *In re Doctors Hosp. 1997, L.P.*, 351 B.R. 813 (Bankr. S.D. Tex. 2006). Forum shopping is palpably obvious here. The Bankruptcy Court has expressed the view that it was entirely consistent with this Courts remand on Salyer's request for a stay for the Trustee to seek, and for the Bankruptcy Court to consider, granting preliminary injunctive relief in this action. Although the Bankruptcy Court denied the request for a receiver at this time, it permitted the Trustee to renew this request or seek other appropriate relief if necessary to prevent the Australian liquidator from disbursing any funds to Fast Falcon. Salyer and the other Defendants are desperate to avoid a receiver or other injunctive relief affecting the liquidator's ability to distribute the $50 million to Fast Falcon so it can be moved into an offshore asset protection safe haven. Filing a motion to withdraw the reference gave them a tool to seek an order derailing the preliminary injunction hearing. Fed. R. Bankr. Proc. 5011(c) (filing a motion to withdraw the reference does not stay proceedings, but must be presented by motion first to the bankruptcy court and then the district court). The fact that Defendants did nothing to seek withdrawal for months and they waited until Fast Falcon had (finally) been served and the Trustee moved for a preliminary injunction demonstrates quite clearly Defendants' forum shopping motive.

III. **REGARDLESS OF HOW THE WITHDRAWAL MOTION IS RESOLVED, THIS COURT SHOULD ORDER THAT IMMEDIATE DISCOVERY CAN BE UNDERTAKEN TO CONFIRM JURISDICTION IN THE SKPM ACTION**

Defendants have previously asserted that Fast Falcon is not subject to the jurisdiction of the Bankruptcy Court – even while trying to maintain the pretense that neither Salyer nor the other Defendants have an interest in Fast Falcon – claiming that service on Fast Falcon was improper since, conveniently, all officers and managers of Fast Falcon that could be identified in the United States (Salyer, Cary Collins, and Jacob Stein) "resigned" from their positions prior to being served. Fast Falcon has appealed the entry of the preliminary injunction, and indicated in

12

its notice of appeal that its appeal will challenge jurisdiction.  *See* Request for Judicial Notice, Exhibit B.[12]  It is doing so in order to call into question the enforceability of the preliminary injunction that was entered against it in this case.

The Trustee has a due process right to conduct discovery into who actually owns and controls Fast Falcon in order to respond to Defendants' jurisdictional challenges.  *El-Fadl v. Cent. Bank of Jordan*, 75 F.3d 668, 676 (D.C. Cir. 1996) (plaintiffs must be given an opportunity to take discovery to establish facts necessary to support jurisdiction prior to deciding a 12(b) motion).  If this Court decides that there is cause to withdraw the reference, it should permit the Trustee to engage in targeted discovery into who actually owns and controls Fast Falcon, how it was formed, and what its contacts with California have been.  Alternatively, if the motion is denied, this Court should clarify that its prior orders in the stay appeals do not preclude the Bankruptcy Court from permitting limited discovery on the jurisdictional issue.

The Trustee is mindful that this Court has previously held that Salyer's actions related to alleged fraudulent transfers of assets could be evidence of "other wrongful acts" implicating his Fifth Amendment rights.  *See* Dec. 10, 2010 Order in Case No. 10-cv-1492 LKK.  But the Trustee is not requesting authority to depose or require any testimony from Salyer at all.  Many others not involved with SK Foods or the criminal case can answer questions and provide documents that will establish ownership and control over Fast Falcon, in particular, Cary Collins (who holds himself out as Fast Falcon's agent for purposes of asserting its claims to the Cedenco Assets), and Jacob Stein (former corporate secretary who admitted to forming Fast Falcon).  In other words, third parties can provide this testimony, and so there would be absolutely no danger to Salyer's Fifth Amendment rights with what the Trustee is proposing.  Indeed, at the April 11,

---

[12] Further proof of Salyer's control over Fast Falcon is the fact that Richard S. E. Johns has specially appeared on Fast Falcon's behalf to handle its appeal of the preliminary injunction.  If Fast Falcon were indeed unrelated to Salyer, it certainly would be an odd coincidence for it to choose, out of the tens of thousands of lawyers in Northern California, a solo practitioner in San Francisco that also happens to be defending Salyer entities in other proceedings in SK Foods's bankruptcy case.  *See* Sharp v. CSSS, LP, Adv. Proc. No. 09-2543 ("Drum Line Action") [Doc. No. 323] (appearance on behalf of Cary Collins, Caroline Salyer, Stefanie Salyer, Robert Pruitt, trustee of the CGS 1999 Trust and SAS 1999 Trust).

SCHNADER HARRISON SEGAL & LEWIS LLP
ONE MONTGOMERY STREET, SUITE 2200
SAN FRANCISCO, CA 94104-5501
TELEPHONE: (415) 364-6700
FAX: (415) 364-6785

2011 hearing before this Court on the Trustee's motion for rehearing in the stay appeals, the Salyer parties stated explicitly that discovery from third parties was acceptable to them.[13]

The consequences in this case could be quite significant if the Trustee is precluded from establishing that the Court has and had jurisdiction over Fast Falcon and that the orders previously issued against it are effective – especially if a stay is imposed upon other aspects of the case pending the conclusion of Salyer's criminal trial. Again, Fast Falcon is not admitting jurisdiction. This is a calculated move in order to call into question the validity of the preliminary injunction here, and possibly, in Australia where steps may need to be taken to ensure that it is given effect there. Accordingly, the Trustee submits that if this Court elects to withdraw the reference, it immediately permit discovery targeted to confirm the jurisdictional issue, or alternatively, if it denies the motion to withdraw the reference, to clarify to the Bankruptcy Court that its prior orders do not preclude the Bankruptcy Court from permitting discovery directed to third parties relevant to the jurisdictional issue.

---

[13] The following discussion by the parties occurred at the April 11 hearing in the stay appeals:

> MR. COLEMAN: . . . . We would also encourage the Court to consider that there may be lesser intrusive means to accomplish what is necessary to protect Mr. Salyer's Fifth Amendment rights.
>
> THE COURT: Tell me what you're thinking.
>
> MR. COLEMAN: Well, for one example, permitting discovery solely against third parties.
>
> THE COURT: Oh, I see. I see. That doesn't seem unreasonable to me. Does it to the adversary parties? If I say, look, you can't talk to Mr. Salyer or his lawyer, but if there are third parties out there that you want to take discovery from, feel free to do so.
>
> MR. KEOWEN: I don't think the adversary defendants have a problem with that, your Honor.

Dist. Ct. Hr'g Tr. (Apr. 11, 2011) at 13:10-23.

Of course, after the matter was remanded to the Bankruptcy Court, the Salyer parties reversed course and took the position that no discovery whatsoever was permitted under this Court's April 14, 2011 order. Since the April 14 order did not specifically address third party discovery one way or the other, the Bankruptcy Court concluded that this Court had intended that all discovery should be stayed.

## IV. CONCLUSION

The Trustee respectfully requests that Defendants' motion to withdraw the reference be denied, and that it enter an order clarifying that the Trustee may seek discovery from third parties as necessary to confirm jurisdiction over Fast Falcon.

Dated:  September 28, 2011			SCHNADER HARRISON SEGAL & LEWIS LLP


						/s/	*Kevin W. Coleman*
							Kevin W. Coleman
						Attorneys for Bradley D. Sharp, Chapter 11 Trustee